## No. 16,856.

PEOPLE EX REL. DUNBAR, ATTORNEY GENERAL *v.* SCHMITT.

(251 P. [2d] 915)

Decided December 15, 1952.   Rehearing denied January 5, 1953.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. FRANK A. WACHOB, Assistant, Mr. WILLIAM RANN NEWCOMB, Assistant. Mr. PHILIP A. ROUSE, Special Assistant, for petitioner.

Messrs. McDOUGAL, KLINGSMITH & ROGERS, for respondent.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS is an original proceeding brought in the Supreme Court of Colorado by the Attorney General in his official capacity, charging the respondent Schmitt, individually and as manager, with a violation of the provisions of section 21, chapter 14, '35 C.S.A., relating to the unauthorized practice of law.

When the charges had been answered and the cause

was at issue, it was referred to Hon. Haslett P. Burke as referee to hear and report thereon.

The referee's report contains the following, inter alia:

"It is charged that, not being authorized thereto, defendant 'has hereinafter held and now holds himself out as being ready, willing and able to pass upon the creation of trusts and trust documents and to create such trust or trusts or cause such trust or trusts to be created as would be legal in all respects and would save the trustor the necessity of making a will as well as the expense incident to the probating thereof, to relieve said trustor from transfer taxes as well as placing him in a more advantageous position in the distribution of profits to members of his family with a consequent reduction in the taxes which the said trustor would otherwise have to pay upon said income and otherwise holds himself ready, willing and able to practice law in the state of Colorado, all of which more fully appears from the printed pamphlets or brochures hereto (in this complaint) attached, marked Exhibits 'A' 'B' and 'C', respectively, and which by reference thereto herein are made a part of this petition.

\* \* \*

"It is admitted, or overwhelmingly established, that defendant has not been licensed to practice law in this state; that the National Pure Trust Service of Chicago (hereinafter referred to as the Pure Trust) is an organization engaged in Colorado in the business of preparing and establishing certain alleged trusts, and, as such, through defendant, has promoted some fifty of these. The legality of such trusts is not an issue in this proceeding, and the Pure Trust is not a party to any of these trust contracts and has no interest in the corpus thereof. Its sole interest is in the fees charged for the service rendered which are based upon a percentage of the value of the property involved. Defendant has been its sole representative in Colorado since January 1, 1949.

As such he has been actively engaged in circulating large amounts of literature * * * containing advice relating to the advisability and legal consequences of the proposed organizations; the relation of partnerships, corporations and other trusts thereto; the advantages thereof, including the obviation of the necessity for the execution of wills; the administration of estates, the saving of taxes, personal liability to creditors, etc. The Pure Trust sells to its customers or clients certain copyrighted forms for the organization of such trusts as it has induced them to establish. It gives advice concerning the use of these forms and guides the trusts so established. It operated in this state through its so-called Rocky Mountain Division, of which defendant was advertised as 'Manager.' He insists he was but its agent or salesman, but on examination he finally and definitely asserted, 'I am the Pure Trust in Colorado.' All the evidence supports that statement. Hence it follows that whatever was done here by the Pure Trust was done by the defendant. The total fees collected from clients to which this scheme was sold run into thousands of dollars, and defendant's 'take' from thirty to fifty per cent thereof.

"The thing that stands out like a mountain peak in all this accumulated mass of evidence is that business men are not lured into disposing of all control over their property, of embarking into unheard of schemes to escape personal liability, taxes, court costs, attorneys' fees, etc., until they are assured by some reputed expert that the whole novel plan has been time-tested and found legally water tight. It cannot be doubted that the inducement for the so-called 'purchases' of this 'service' was legal advice, nothing else, and it makes no difference whether the Chicago concern was legitimate or otherwise, or whether its representations were true or false. It was practicing law in Colorado without authority, and defendant, who was reenforcing its claims and making representations on his own behalf and his own authority,

was doing the same thing, both in direct violation of our statutes and in defiance and contempt of this court.

"Section 21, chapter 14, volume 2, 1935 C.S.A., makes it unlawful for any one not having a license from this court as such 'to hold himself out in any manner as an attorney.' Of course one may so hold himself out by writing, cards, signs, stationery, etc., but certainly may also, and perhaps even more effectively, hold himself out by his conduct. If he engages in the business of advising others on those important and complicated legal problems usually falling within the practice of the profession, pretending that he is qualified to do so, does it openly and constantly, year after year, by conversation and writing, and charges and collects substantial fees therefor, I can think of no way he could more effectively 'hold himself out' as having the knowledge and the necessary authority to so act. It must be borne in mind also that this legal information and advice was by no means limited to those propositions of law relating to the every day affairs of the average citizen or business man. It involved the most technical laws and rules, largely new and untried, through which only a learned and skillful lawyer would undertake to pilot a client.

\* \* \*

"In closing, I call attention to three original exhibits hereto attached which I consider vital, indisputable and controlling. These are People's Exhibits 'N', 'H', and 'S'.

\* \* \*

"Finally, I conclude that defendant is overwhelmingly proven to have been engaged in the practice of law over a considerable period of time, dealing with complicated legal problems, in an important field, involving the necessity for profound knowledge. He did this without license from this court and in contempt of its authority, and is hence subject to such discipline as this court, in its wisdom, may impose."

Reference is made by the referee in his report to Exhibits N, H and S which are attached thereto.

It would unduly prolong this opinion to set forth these exhibits; however, in Exhibit N we find the following, written to a certified public accountant and bearing the signature of defendant:

"A pure trust indenture contract is a *contract* entered into between a Trust Creator and his selected Trustees, which constitutes a legal entity that can own property, transact business of any kind and nature as can an individual, through the written minutes its Trustees formulate and attach to the Indenture Contract and become a part thereof. The Trustees are the managers of the Trusts business and corpus.

"The Pure Trust owns the assets with which it deals, and is not an agency holding property for others. No person has power over it; no one possesses the right to revoke it; no one has a reversionary right to its assets. The Trust Indenture Contract is for 25 years.

"Beneficial certificates it issues, have no lien on the assets, and cannot, during the lifetime of the Trust, convey any interest in the Trust Corpus. Their possession and ownership award the holder a right to receive Trustees' profit distribution during the lifetime of the Trust, and distribution of corpus at the termination thereof. Beneficial Certificate holders have no voice in the management of the trust affairs whatsoever.

"If you search deeply into information available to you from a number of sources, you will find a good reason to want to change your attitude and your report to the Buckley Brothers. You cannot challenge the truthfulness of the above three paragraphs."

Immediately following the last quoted portion of this exhibit the author quotes from an opinion of the United States Supreme Court which, he says, is applicable to a pure trust.

Exhibit H pertains to partnerships, is signed by D. W. Schmitt, Manager, and reads as follows:

"Few people are aware of the *extremely grave hazards* in *Partnership Relationship*. Very few ever think of

such hazards in connection with their own Partnership.

"It will pay you to read and study the rest of this message.

\* \* \*

"1. Partnership involves personal liability of Partners.

"2. Each Partner may legally bind the Partnership and the liability of the Partnership becomes the legal liability of each Partner.

"3. It matters not whether an obligation arose as a result of commercial, civil or semi-criminal transactions. When reduced to a judgment, *it becomes a lien on all the property of all the partners.*

"4. Death, insanity, debts and bankruptcy of a Partner, or bankruptcy of the Partnership, can destroy the partnership.

"5. *Limited Partnerships* and *Family Partnerships* have become the target of a general treasury attack and its success in invalidating an overwhelming number of such cases, presents the grave danger that *such partnerships will not stand up.*

"6. Congress will hardly bow to the request of the President for higher taxes. Watch the Treasury Department step up its frantic search to find needed revenue.

"7. Estate Probating, Will Contesting, Court Costs, Estate and Inheritance Taxes Federal and State,—can materially reduce and in many instances almost completely eliminate an Estate.

"Our Pure Trust procedure *guarantees* — Total Family Protection — No deviation After Death—Complete Protection In all Partnership Liabilities—Elimination of Partition Expenses.

"Our Pure Trust organization *Protects Anywhere in the U. S. Against* — Estate Probating — Will Contests — Judgments — Liabilities — Court Costs — Inheritance and Estate Taxes both State and Federal.

"Your Organization set up as a Pure Trust may own property and conduct a business in any state without permission from any one. *No state has any authority to interfere with it.* No recording — no state report. Your affairs are free from outside meddling and snoopers."

Exhibit S consists of four pages, and with reference thereto defendant states that it was a carbon copy of a brief that he prepared for an attorney in The Denver National Bank. This exhibit reads as follows:

"I ask your careful examination of the within information on our Pure Trust organization procedure. You will find a solution to your estate problem far beyond what you had hoped for, and every word herein contained is as truthful as any man can speak. I am happy to submit it in writing and signed, and am hoping that any objections to it will also be reduced in writing.

"Laws in each State provide procedure upon the death for dissolution and distribution of all assets. They throw open the estate to bona fide and unscrupulous creditors; deductions are made for court costs, publication, appraisers, attorneys and taxes both state and federal. There may be minor children or grand children; there may be handicapped beneficiaries; there may be fee-eating representatives with no regard to others' feelings or rights.

"No Government, no business, no activity, not even a religious group can either exist or function without organization. Why should not the same step be taken to set up a family organization to preserve the fruits of an active and successful life?

"What do you wish to accomplish through YOUR organization? How much estate shrinkage, or how little, do you want to suffer? Do you want your loved ones to gamble needlessly on what the future might hold in store for them?

"A Living Trust *is not* an Organization. If it establishes a complete transfer of title, but withholds possession from the beneficiary, a gift tax must be paid, plus the trustees' fees and all other services he uses, subject

to his interpretation. Such a Trust must not permit any possible reversion, benefit or control by the giver, and that it could not be made in anticipation of death.

"If your *Living Trust* is revocable and subject to change and control by the grantor, no Gift Tax is paid, but inheritance taxes will be assessed when the Grantor dies, together with all accompanying expenses. Just think a bit on how many serious situations could develope here. You haven't settled a thing only a possibility that you would not suffer quite as much estate shrinkage as you would through a simple will and probating. You have not eliminated any liability. Reserving the power to alter or control makes your estate still liable for your mis-deeds or failings. Your designated Trustee or Co-trustees might both die, and calamities that slip in occasionally might take or seriously handicap your granddaughters. Not pleasant things to think of, yet, we are dealing with just that kind of a subject.

"A Living Trust can't be amended from the grave. The Organization we will recommend below is the only organization that can control from beyond the grave. That is the reason we refer to it as the only known 100% family organization available today.

"National Pure Trust Service Pure Trust organization is U. S. Constitutional Procedure. It is organizational procedure that is first a contract, and therefore protected by the Constitution in Article I, Section 10, Paragraph 1, as adopted by the Convention, September 17, 1787. If you are ever told, or believe yourself, that the Constitution will be changed to take away this right to enter into a contract for some lawful purpose, then get ready to toss away your insurance policies, deeds, stock certificates, check books and any other items involving contractual rights.

\* \* \*

"Your Trust Organization must and does own its assets fully and completely, as would any individual. That means that no one can own any part of such assets at the

same time the trust does. That's the way an individual owns; that is why a Pure Trust has rights equal to any individual. That means also, that no one can have any power over a Pure Trust; no voice in its management or control; no reversionary right to its assets. As a separate and distinct individual, it makes no reports to any state and puts nothing on record. It may own property or conduct business in any State without permission from any one.

"Your Family Trust issues its certificates to you and your son in exchange for the assets you convey to the Trust. Here you have an even exchange, thus no gift tax. Now, lets talk about the certificates: Certificates convey no undivided interest in Trust Assets, nor any voice in management or control. Benefits conveyed consist solely in distribution of income as Trustees might make from time to time, and distribution of corpus when the Trust is dissolved. Certificates are non-assessable, non-taxable, and not reachable by creditors as they have no value.

"Every purpose and desire the Trustees may have for the good of the Family Trust Organization may be recorded as written minutes which alone can obligate the Trust. If it is not recorded in the Minutes, it's not an obligation. Do you see how this might eliminate all Liability? Trustees or certificate holders are not liable for Trust obligations, nor is Trust liable for their obligations.

"The death of the Trust Creator, Trustees or certificate holders has no effect on the Pure Trust which continues to hold to its ownership as before such death. No probating; no expenses.

\* \* \*

"One generation after another can pass, each receive the benefit of the Trust, and in passing on merely surrender their certificates to their heirs who do likewise. The term of the Trust is for 25 years, but may be increased for additional periods by the action of the

Trustees. In like manner, the unanimous action of the Board of Trustees may dissolve the Trust at a sooner date.

"Summing up for you the major points, we have: Your family organization trust will accomplish every purpose or desire you may have, all the while minimizing taxes while it serves the family free from liability and the necessity of probating. It will do the same for your son. It will do the same for your granddaughters. It makes orderly distribution when such is desired at which time a capital gain tax is paid which is a minimum. It is as sound as the Constitution of the United States from which it derives its authority. It's as free from outside interference as it is humanly possible to make. Constantly changing laws do not interfere with it. There is nothing sounder available to you today."

Defendant admitted that he had prepared and distributed copies of Exhibits H and S to prospective purchasers.

The transcript of evidence before the referee and exhibits introduced, as well as the briefs filed, have been read and studied, and we are persuaded that there is ample competent evidence in the record to warrant and support the findings of the referee, and the same are hereby approved.

We find respondent, D. W. Schmitt, guilty of contempt of this court; adjudge and decree that he be fined therefor in the sum of $500.00; that the sum be paid into the office of the clerk of this court within twenty days from the announcement hereof; and that in default of said payment defendant be incarcerated in the county jail of the City and County of Denver and there held for a period of ninety days or until the fine has been paid.

MR. JUSTICE CLARK does not participate.