**The PEOPLE of the State of Colorado, Complainant,**

v.

**Lloyd W. MACY, Attorney–Respondent.**

**No. 90SA9.**

Supreme Court of Colorado,
En Banc.

April 2, 1990.

Linda Donnelly, Disciplinary Counsel, and John Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Lloyd W. Macy, Northglenn, pro se.

PER CURIAM.

This is an attorney discipline case in which a hearing panel of the Supreme Court Grievance Committee unanimously recommended that the respondent, Lloyd W. Macy, be suspended from practicing law for two years and be assessed the costs of the proceeding. We accept the panel's recommendation.

A hearing board of the grievance committee heard this matter, and a hearing panel approved the findings and conclusions of the hearing board. Macy elected not to file exceptions to the hearing panel's report. *See* C.R.C.P. 241.20(b)(2). The hearing board's findings and conclusions were based on the amended complaint, the allegations of which were admitted by Macy; documentary evidence; stipulations of the parties; and Macy's testimony before the hearing board.

## I.

Lloyd W. Macy was admitted to the bar of this court on April 5, 1967. He is therefore subject to the jurisdiction of this court and its grievance committee in all matters relating to the practice of law. C.R.C.P. 241.1(b).

In 1986, Charles J. Taylor, who is not a lawyer, approached Macy for advice in connection with Taylor's desire to sell "living trust" packages to customers who wished to use them to avoid taxes or probate. In December of that year, Macy met with Taylor and reviewed a package of "living trust" documents prepared by Taylor for marketing through nonlawyer salespersons.

Taylor began selling "living trust" documents in January 1987. During the next several months, Macy reviewed several "living trust" packages prepared for individuals and answered questions addressed to him by nonlawyer salespersons regarding individual customers' concerns. Taylor paid Macy $75.00 per hour for his services.

## II.

Macy's conduct violated two provisions of the Code of Professional Respon-

sibility: DR 1–102(A)(1) (violating a disciplinary rule), and DR 3–101(A) (aiding a nonlawyer in the unauthorized practice of law). Aiding a nonlawyer in the unauthorized practice of law is a violation of a duty owed to the legal profession. *See* The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) 7.0 (*"Standards for Lawyer Discipline"*). The creation and sale of trust documents by nonlawyers constitutes the unauthorized practice of law. *People v. Schmitt,* 126 Colo. 546, 251 P.2d 915 (1952). This court has suspended an attorney in the past for aiding a nonlawyer in marketing trusts to the public. *People v. Boyls,* 197 Colo. 242, 591 P.2d 1315 (1979).

The *Standards for Lawyer Discipline* prescribe suspension for this type of conduct when

> a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.

*Standards for Lawyer Discipline* 7.2. The *Standards for Lawyer Discipline* also suggest certain factors that aggravate or mitigate an attorney's misconduct and therefore increase or decrease the appropriate sanction. Several aggravating factors are present in this case. Macy has a prior disciplinary record, having received a letter of admonition in 1980 and a private censure in 1985. *See Standards for Lawyer Discipline* 9.22(a). Each was based on neglect in representing a client. Macy has substantial experience in the practice of law. *See id.* at 9.22(i). The evidence suggests that Macy may have acted out of a selfish desire to generate legal business for himself, rather than simply to receive legal fees from Taylor. *See id.* at 9.22(b). Macy's conduct constituted multiple offenses and a pattern of misconduct. *See id.* at 9.22(c) and (d). Finally, Macy's disciplinary record reveals that he has repeatedly made errors of judgment, and that the advice he gave customers of Taylor's "living trust" operation was in part patently erroneous. Both these latter factors reflect adversely on Macy's fitness to practice law, *see Standards for Lawyer Discipline* 9.1, and the grave risk of serious financial harm to purchasers of Taylor's trust documents makes his professional misconduct especially serious. *See Standards for Lawyer Discipline* 7.2.

In mitigation, Macy was very cooperative during the investigation and hearing of these disciplinary proceedings. *See Standards for Lawyer Discipline* 9.32(e). This mitigating factor, however, is outweighed by the aggravating factors already described.

The grievance committee has recommended that Macy be suspended for two years. In *People v. Boyls,* we suspended Boyls for one year for aiding a nonlawyer in the preparation and marketing of a form of trust. *Boyls,* however, was a case of first impression for this court and was decided more than ten years ago. Macy is presumed aware of our decision in that case, and therefore can make no credible claim that he was unaware that his conduct constituted aiding a nonlawyer in the unauthorized practice of law. Furthermore, as noted, a number of aggravating factors, including serious risk of severe adverse legal consequences to purchasers of the trust packages, are present.

### III.

After reviewing the findings of the hearing board of the grievance committee and the length of suspension recommended by the committee, we conclude that suspension for two years is appropriate. It is hereby ordered that Lloyd W. Macy be suspended from the practice of law for two years, effective April 25, 1990. It is further ordered that Macy pay costs in the amount of $161.37 within thirty days of the date of this order to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Denver, Colorado 80202. Macy shall not be reinstated until he has complied with C.R.C.P. 241.22(b) and has paid the costs as ordered.