**The PEOPLE of the State of Colorado, Complainant,**

v.

**Marie T. VOLK, Attorney–Respondent.**

**No. 90SA234.**

Supreme Court of Colorado, En Banc.

Feb. 25, 1991.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Alex Stephen Keller, Denver, for attorney-respondent.

PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee unanimously approved the recommendation of the hearing board that the attorney-respondent receive a public censure for aiding nonlawyers in the unauthorized practice of law. The assistant disciplinary counsel has excepted to this recommendation as too lenient. We accept the recommendation of the panel that the respondent be publicly censured and assess her the costs of these proceedings.

I

The respondent was admitted to the bar of this court on May 19, 1982, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b).

The complaint filed by the assistant disciplinary counsel charged that the respondent violated DR 3–101(A) (a lawyer shall not aid a nonlawyer in the unauthorized practice of law); as well as DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P. 241.6(1) (any act or omission which violates the Code of Professional Responsibility constitutes grounds for lawyer discipline). The respondent and the assistant disciplinary counsel entered into a joint unconditional stipulation of facts and admission of misconduct. In addition, the hearing board received exhibits, and listened to testimony presented by both sides on the issues of aggravating and mitigating factors. The board found that the following facts were established by clear and convincing evidence.

After receiving her license, the respondent practiced law in the public sector for four years, first as an assistant attorney

general, then as an assistant county attorney. In 1988, the respondent began a solo private practice. In February or March of 1988, Charles J. Taylor, an insurance salesman and president of American National, Inc., hired the respondent to review "living trusts" sold to purchasers by nonlawyer sales representatives. Taylor is not a lawyer. This is not the first time that Taylor's living trusts have surfaced in a disciplinary proceeding before this court. *See People v. Macy*, 789 P.2d 188 (Colo.1990).

Between March and October of 1988, the respondent reviewed a number of living trusts for individuals at the request of American National, Taylor, and other nonlawyer sales representatives. The respondent considered the corporation to be her client, not the individual purchasers of the trusts. Based on what Taylor told her, the respondent believed that American National was an insurance company primarily serving customers in rural areas. The respondent thought that the living trusts she was to review were an ancillary service offered to the insurance company's customers. Taylor told the respondent that the living trusts had been prepared by an experienced attorney, Lloyd Macy, who had decided to retire.[1] Pursuant to a written agreement with Taylor, the respondent billed American National $50 for each trust she reviewed. She hoped and anticipated that she would be doing other legal work for the corporation. The respondent reviewed about twenty-five trusts for which she received approximately $850. Her final bill to American National was never paid.

Taylor hired a number of nonlawyer salesmen. The salesmen sold the trusts door-to-door and at senior citizen centers. A salesman would bring a completed application for a living trust to the office and information from the application would be keyed into the blanks in the living trust form. The customer was charged $400 to

1. Lloyd Macy was suspended from the practice of law for two years for his involvement with Taylor and the sale of these living trusts. *See People v. Macy,* 789 P.2d 188 (Colo.1990). The

*Macy* opinion was released on April 2, 1990, after the hearing board in this case made its findings and recommendation.

$500 for the trust. Taylor testified in a deposition that his company made between $10,000 to $15,000 from selling the living trusts. The respondent then reviewed the completed trust, ensured that the information in the trust was consistent with the application, and directed any necessary corrections. The respondent then signed a form letter addressed to the individual purchaser, and enclosed the final trust document and related quitclaim deeds, along with instructions on how the trust should be implemented.[2]

The Unauthorized Practice of Law (UPL) Committee was investigating Taylor's operation as early as 1987. The respondent learned of the investigation when she was interviewed by the UPL committee's investigator in September 1988. She cooperated fully in that investigation. She questioned Taylor about the investigation and he stated that everything had been taken care of. The respondent severed her connection with Taylor and American National on October 8, 1988, when she heard a process server was in the office serving "supreme court papers." The grievance committee's request for investigation in this proceeding was sent to the respondent ten days later.

No copy of the trust was presented to the board, and there was no expert testimony that the trust was defective or dangerous. There was also no evidence that any purchaser of the trust suffered actual harm. Nevertheless, the hearing board found, and we agree, that the potential for harm existed because of the manner in which Taylor's system operated. The purchasers did not have access to competent legal advice with respect to the effects and risks of the living trusts. The respondent, as the lawyer apparently approving the trusts, had no contact with the purchasers.

## II

■ The respondent admitted that the counseling and sale of the living trusts by nonlawyers constituted the unauthorized practice of law. *See People v. Schmitt,* 126 Colo. 546, 555, 251 P.2d 915, 920 (1952) (the creation and sale of trust documents by nonlawyers constitutes the unauthorized practice of law). In reviewing the living trusts here, the respondent aided a nonlawyer in the unauthorized practice of law, contrary to DR 3–101(A). *Macy,* 789 P.2d at 189; *People v. Boyls,* 197 Colo. 242, 243, 591 P.2d 1315, 1316 (1979) (lawyer suspended for one year for aiding nonlawyer "educators" in marketing trusts similar to the living trusts in this case). Because the respondent violated DR 3–101(A), she also violated DR 1–102(A)(1) and C.R.C.P. 241.-6(1).

■ The hearing panel unanimously approved the recommendation of the hearing board that the respondent receive a public censure for her misconduct. As the assistant disciplinary counsel points out, suspension is generally prescribed for this type of conduct. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), absent aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." *ABA Standards* 7.2. *See Macy,* 789 P.2d at 189.

In reaching the determination that public censure was appropriate, the hearing board found the existence of the following mitigating factors: (1) the absence of a prior disciplinary record, *ABA Standards* 9.32(a); (2) respondent's full and free disclosure to the UPL committee and the grievance committee and a cooperative attitude throughout the proceedings, *ABA Standards* 9.32(e); (3) respondent's inexperience in the practice of the type of law involved in this case, *ABA Standards* 9.32(f); (4) respondent's good character and

---

**2.** The form letter provided in part:
  This is a life planning document. It is not an income tax nor an estate planning document. It is designed only to avoid the costs and delay of probate.

The letters were signed "Marie T. Volk, Attorney-at-Law."

reputation in the legal community, *ABA Standards* 9.32(g); (5) respondent's remorse, *ABA Standards* 9.32(*l*); and (6) respondent's voluntary imposition of an interim suspension by leaving the practice of law in Colorado and taking a paralegal position in Ohio pending the outcome of these proceedings, *ABA Standards* 9.32(k). In aggravation, the board found that the respondent had a selfish motive because she was receiving payments for review of the trust documents and hoped that the relationship would generate more legal business. *ABA Standards* 9.22(b).

The assistant disciplinary counsel reminds us that we suspended the lawyers in *Boyls* and *Macy* for aiding nonlawyers in the sale of trusts. We find those cases distinguishable. The lawyer in *Boyls* was significantly more involved than this respondent in the sale and marketing of the trusts, and there were aggravating factors present in *Macy*, including a prior history of discipline, that are absent in this case. Weighing the factors in mitigation against the seriousness of the misconduct, we conclude that public censure is an appropriate sanction.

III

Accordingly, we accept the recommendation of the hearing panel of the grievance committee and publicly censure the respondent Marie T. Volk. Participation for profit in schemes by nonlawyers to sell so-called living trusts creates at least the potential for great harm. Had actual harm to any of the purchasers of the trusts been documented, more severe discipline would have been imposed. We publicly reprimand Volk and assess her the costs of these proceedings in the amount of $553.75. The costs are payable within thirty days after the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.