**The PEOPLE of the State of Colorado, Complainant,**

v.

**Fred M. CASSIDY, Attorney–Respondent.**

**No. 94SA293.**

Supreme Court of Colorado, En Banc.

Nov. 7, 1994.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Fred M. Cassidy, pro se.

**PER CURIAM.**

The respondent[1] in this attorney discipline case was charged with aiding nonlawyers in

---

1. The respondent was admitted to the bar of this court on October 19, 1981, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its

the practice of law by assisting the nonlawyers in selling "living trust" document packages to customers in Colorado. A hearing board granted the disciplinary counsel's motion for summary judgment and recommended that the respondent be suspended for six months from the practice of law. A hearing panel of the Supreme Court Grievance Committee approved the board's findings and recommendation. The disciplinary counsel did not except to the panel's action, and the respondent's exceptions were subsequently stricken because he did not file a designation of record as required under C.R.C.P. 241.20(b)(4). *People v. Butler,* 875 P.2d 219, 219 (Colo.1994). We accept the panel's recommendation.

## I

The disciplinary counsel filed a motion for summary judgment with respect to the respondent's violations of the Code of Professional Responsibility. The respondent did not respond to the motion and did not attend the hearing before the board. Based on the disciplinary counsel's evidence, including the deposition of the respondent, the board found the following facts.

## A

The respondent went on inactive status February 9, 1987, *see* C.R.C.P. 227(A)(6), and remained inactive until April 29, 1991, when he paid the necessary fees for active status, C.R.C.P. 227(A)(7). While on inactive status in October or November 1990, the respondent began selling life insurance for the McCarter Agency. The McCarter Agency was involved in a joint venture with Somerset Group, Inc., and the Agency sold a living trust package created by the Somerset Group. The Agency provided customer leads to the respondent developed through telemarketing. When the respondent went to meet the customer, he did not know whether the customer was interested in life insurance or a living trust. The respondent would decide during the interview which of these to explain depending on the stated interest of the customer. The living trusts sold were

grievance committee in these proceedings.

prepared on the living trust forms provided to the McCarter Agency by the Somerset Group. This was a standard package of forms developed by the Somerset Group, which were personalized simply by filling in the customer's name and beneficiaries in the appropriate blanks.

In April 1991, the respondent contacted Clealon Mann, the principal in the Somerset Group, and told him that he was an inactive member of the Colorado bar. The respondent offered to review draft revocable living trust documents that the Somerset Group prepared for Colorado residents and to prepare opinion letters for those persons. The respondent and Mann agreed to the respondent's providing this service under the following arrangement:

1. Purchasers of the estate planning document preparation service offered by McCarter and Somerset were not required to pay for an opinion letter from the respondent. The insurance agent's commission was based entirely on the price paid to McCarter or Somerset.

2. The check to the respondent from the purchaser or client was separate from the payment for the living trust documents, and the respondent did not rebate any portion of his fee to McCarter or Somerset.

3. Neither McCarter nor Somerset paid the respondent any additional amount, and the respondent did not have any share or other financial interest in either McCarter or Somerset.

4. The respondent's name did not appear in any literature distributed by McCarter or Somerset.

5. The respondent did not prepare, review, or revise Somerset's estate planning documents.

6. He did not train insurance agents and did not answer their questions.

7. The respondent's opinion letters were not prepared with reference to guidelines or instructions from McCarter or Somerset, and the respondent did not furnish copies of the letters to McCarter or Somerset.

C.R.C.P. 241.1(b).

The Somerset Group's living trust package was essentially the same one that it had provided to the McCarter Agency when the respondent was selling living trusts for McCarter. The respondent transferred to active status in Colorado in April 1991.

When an insurance agent sold a living trust package, the agent informed the customer that the respondent would be the lawyer to issue an opinion letter, if the customer wanted, as to the validity of the trust. If the customer wanted such an opinion letter, they would write one check in the amount of $1,395, payable to Somerset, and another check for $100, payable to the respondent. After the two checks were received by the Somerset Group, they would forward the $100 check to the respondent.

The respondent completed between sixteen and twenty opinion letters for customers of the Somerset Group between May 1991 and September 1992. These letters basically stated that the trust complied with current law, and if properly funded, would provide for the distribution of assets upon death without the necessity of probate. The letters noted that the client had to properly execute the documents involved and had to fund the trust, which could be accomplished by using forms provided by Somerset or from other sources. On September 1, 1992, the Somerset Group broke off relations with the McCarter Agency, and the respondent terminated his relationship with both.

### B

■ The counseling and sale of living trusts by nonlawyers constitutes the unauthorized practice of law. *People v. Volk,* 805 P.2d 1116, 1118 (Colo.1991). *See People ex rel. Dunbar v. Schmitt,* 126 Colo. 546, 555, 251 P.2d 915, 920 (1952) (the creation and sale of trust documents by nonlawyers constitutes the unauthorized practice of law). The hearing board properly found that in selling living trusts for the McCarter Agency, the respondent aided a nonlawyer in the unauthorized practice of law, contrary to DR 3–101(A). *People v. Macy,* 789 P.2d 188, 189

(Colo.1990); *People v. Boyls,* 197 Colo. 242, 243, 591 P.2d 1315, 1316 (1979) (lawyer suspended for one year for aiding nonlawyer "educators" to market trusts similar to the living trusts in this case). As an agent for the McCarter Agency, the respondent advised customers of the availability and advisability of the living trust package provided by McCarter. "[W]hether a living trust is appropriate in a given case calls for the exercise of independent professional judgment by a lawyer." *Committee on Professional Ethics and Conduct of the Iowa Bar Ass'n v. Baker,* 492 N.W.2d 695, 703 (Iowa 1992). Because the respondent was on inactive status at the time he sold the living trust packages for the McCarter Agency, he engaged in the unauthorized practice of law, C.R.C.P. 227(A)(6)(b) (upon notice of transfer to inactive status the lawyer is no longer eligible to practice law), contrary to DR 3–101(B) (a lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction).

■ Moreover, as the board correctly determined, the respondent assisted the Somerset Group in the unauthorized practice of law. The Somerset Group prepared and marketed a living trust package to customers in Colorado, who relied on the oral explanations and advice of nonlawyer salesmen. The Somerset Group was involved in the unauthorized practice of law by selecting one package as appropriate for its customers. By permitting his name to be associated with the living trust packages, even if only by the oral representations of the salesmen, and by preparing opinion letters advising that the trusts were valid, the respondent again aided a nonlawyer in the unauthorized practice of law, in violation of DR 3–101(A). Finally, by allowing the Somerset Group to provide his name, exclusively, to its customers upon the sale of a living trust package, the respondent also violated DR 2–103(C) (a lawyer shall not request a person or organization to recommend or promote the use of the lawyer's services as a private practitioner except as authorized in DR 2–101).[2]

---

2. The respondent asserted that his relationship with the McCarter Agency and the Somerset Group "complied" with Colorado Bar Ass'n Ethics Comm., Formal Op. 87 (collaboration with non-lawyers in the preparation and marketing of estate planning documents). The respondent's

## II

■ The hearing panel approved the board's recommendation that the respondent be suspended for six months, and the assistant disciplinary counsel has not excepted to the recommendation. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & 1992 Supp.) (ABA *Standards*), absent aggravating or mitigating circumstances, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system." ABA *Standards* 7.2. *See Macy*, 789 P.2d at 189. While the board did not find that any purchaser of the Somerset living trusts suffered actual harm, the potential for harm existed. *Volk*, 805 P.2d at 1118.

■ The board found the existence of the following aggravating factors: the respondent has exhibited a selfish motive, ABA *Standards* 9.22(b); engaged in multiple offenses, *id.* at 9.22(d); and refused to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g). The respondent also failed to appear before the hearing board. In mitigation, the respondent has no prior disciplinary history, *id.* at 9.32(a). Weighing the seriousness of the misconduct together with the aggravating and mitigating factors, we conclude that a six-month suspension is appropriate. Accordingly, we accept the hearing panel's recommendation.

## III

It is hereby ordered that Fred M. Cassidy be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that Cassidy pay costs in the amount of $384.46 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

■

sale of living trusts and his issuance of opinion letters in fact did not "comply" with Formal