[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 92.]

CINCINNATI BAR ASSOCIATION *v.* KATHMAN.

[Cite as *Cincinnati Bar Assn. v. Kathman*, 2001-Ohio-157.]

*Attorneys at law—Misconduct—Six-month suspension—Practicing under a trade name—Assisting nonattorneys to market or sell living trusts.*

(No. 00-1865—Submitted January 9, 2001—Decided June 13, 2001.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 00-15.

————————————

**MOYER, C.J.**

{¶ 1} Relator, Cincinnati Bar Association, filed a complaint charging respondent, Edward T. Kathman of Cincinnati, Ohio, Attorney Registration No. 0055446, with violating DR 2-102(B) (practicing under a trade name), DR 3-101(A) (aiding a nonattorney in the unauthorized practice of law), DR 3-102(A) (sharing legal fees with a nonattorney), and DR 5-107(B) (permitting a person who recommends, employs, or pays an attorney to render legal services for another to direct or regulate the attorney's professional judgment in rendering such legal services). All of the charges against respondent arose out of a professional relationship he had with the Estate Preservation Group ("EPG"), an Ohio corporation engaged in the marketing and selling of living trusts prepared by the Estate Plan, a corporation headquartered in Nevada.

{¶ 2} At a hearing before the Board of Commissioners on Grievances and Discipline of the Supreme Court, the board heard testimony from respondent and Ronald A. Fox, an agent of EPG, an insurance salesman, and a lifelong friend of respondent. The board's findings of fact, which are undisputed, follow.

{¶ 3} Respondent was admitted to the practice of law in Ohio in 1991, and is currently a sole practitioner in Cincinnati, Ohio. After being contacted by Fox

in February 1999, respondent agreed to serve as a "review attorney" for EPG.  EPG sold insurance products including life insurance and annuities and engaged in the marketing and selling of living trusts prepared by the Estate Plan.  EPG prepared letterhead that read:

"The Estate Preservation Group

"An Affiliate of The Estate Plan

"Edward T, Kathman, Attorney"

{¶ 4} Respondent, however, is not the attorney for EPG.  EPG referred individuals to several attorneys.

{¶ 5} Respondent participated in the selling of living trusts as follows.  First, an agent of EPG would contact individuals interested in a living trust.  The agent would have the individual sign a Client Service Agreement, a Client Asset Revelation Agreement, and a Retainer for Legal Services.  The agent assisted the individuals in filling out a financial workbook that contained the clients' financial circumstances and distribution directives.  The agent then obtained a check, typically for $1,995.  That check was the fee for the preparation of the Estate Plan documents, for attorney's review, and for services performed by the agent.  The full fee was made payable to respondent and was obtained prior to any contact by respondent with the client.  When the check was sent to respondent, he would deduct $200 for his legal fee, with the remaining money being split between EPG for financial consultation and the Estate Plan for document preparation.

{¶ 6} Respondent, after receiving a completed workbook containing the clients' personal information, beneficiary designation, and bequest, would telephone the client and explain his role in the process.  During this conversation, respondent would advise the client on his entitlement to a fee and how the total fee would be split among the various entities.  After speaking with the client on the telephone, respondent would then direct The Estate Plan to prepare the living trust.  The final living trust documents were sent directly to EPG or to an employee of

EPG. Respondent would receive only a summary of any changes made to the trust document, but would not receive the completed trust document. The agent then took the final documents to the client, at which time the agent assisted in the execution of the documents.

{¶ 7} After being contacted by a representative of relator's grievance committee, respondent removed his name from the letterhead. Respondent, however, has continued to assist in the preparation of living trusts through EPG (now known as The Senior Group) and The Estate Plan since the spring of the year 2000. In the year 2000, respondent issued checks to Ronald Fox for paralegal services even though respondent does not direct or supervise the actions of Fox.

{¶ 8} In disciplinary cases, this court renders the final determination of facts and conclusions of law. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph one of the syllabus. After a thorough review of the record in this case, we adopt the findings of fact of the board. We do not, however, adopt all of its conclusions of law. Specifically, we adopt the board's conclusions of law with regard to DR 2-102(B) (practicing under a trade name), DR 3-102(A) (sharing legal fees with a nonattorney), and DR 5-107(B) (permitting a person who recommends, employs, or pays an attorney to render legal services for another to direct or regulate the attorney's professional judgment in rendering such legal services). We reject, however, the board's conclusion that respondent has not violated DR 3-101(A) (aiding a nonattorney in the unauthorized practice of law). Each of these Disciplinary Code violations is addressed separately.

## DR 2-102(B)

{¶ 9} DR 2-102(B) provides, "A lawyer in private practice shall not practice under a trade name." The board concluded that respondent had violated DR 2-102(B) because his name was listed on the letterhead of The Estate Preservation Group. Respondent admitted to this fact, and, upon learning that it was a violation of the Disciplinary Rules, immediately caused his name to be removed from the

SUPREME COURT OF OHIO

letterhead. Based on his admission and subsequent actions, the board found that there was clear and convincing evidence that respondent had been practicing under the trade name "The Estate Planning Group" and "The Estate Plan" in violation of DR 2-102(B). We adopt the board's conclusion that respondent violated this rule.

DR 3-102(A)

{¶ 10} DR 3-102(A) states that a "lawyer * * * shall not share legal fees with a non-lawyer" subject to several exceptions, none of which is applicable here. After reviewing the evidence presented to the board, we adopt its conclusion that respondent violated DR 3-102(A).

{¶ 11} Respondent testified that when he received the $1,995 check from a client, $200 of that check was deposited into his trust account, and the remainder was distributed to The Estate Plan and The Estate Preservation Group and its representatives. Upon learning that this was a violation of DR 3-102(A), respondent began calling Ron Fox, the representative of EPG, his paralegal. Respondent further testified that there is a fixed fee he pays for the preparation of documents by The Estate Plan and that he pays a representative of EPG $600 as a paralegal fee. Respondent stated at the hearing that the complete fee is gross income to him and that he deducts the fees paid to The Estate Plan and the $600 paralegal fee paid to Fox as expenses. The respondent further admitted that Mr. Fox is an independent contractor and acts as a paralegal only when estate planning services are rendered in connection with EPG and The Estate Plan.

{¶ 12} At the hearing, respondent indicated that in the future, any check received from a client would be deposited into his general account and not his escrow account. Additionally, respondent testified that he would issue a 1099 to Fox because the fee paid by respondent would be income to Fox.

{¶ 13} Based on the foregoing, the board concluded that calling Fox a paralegal did not alter the true nature of the relationship between the two. It further concluded that the fee arrangement involving respondent, EPG, and The Estate Plan

4

constituted a fee-sharing agreement between an attorney and a nonattorney in violation of DR 3-102(A). The board's conclusion is supported by clear and convincing evidence and is hereby adopted.

DR 5-107(B)

{¶ 14} DR 5-107(B) provides, "A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." The board concluded that there is not clear and convincing evidence to prove that respondent had violated DR 5-107(B), and relator, in its brief, has waived any objection to this finding. Therefore, we adopt the board's conclusion that respondent has not violated DR 5-107(B).

DR 3-101(A)

{¶ 15} DR 3-101(A) states that a "lawyer shall not aid a non-lawyer in the unauthorized practice of law." The board concluded that the arrangement between respondent, EPG, and The Estate Plan did not constitute a violation of DR 3-101(A). While this court has repeatedly stated that the marketing of living trusts by nonattorneys is the unauthorized practice of law, see, *e.g.*, *Trumbull Cty. Bar Assn. v. Hanna* (1997), 80 Ohio St.3d 58, 60, 684 N.E.2d 329, 331, we have not clearly defined whether an attorney, licensed to practice law in the state of Ohio, aids in the unauthorized practice of law when he or she assists nonattorneys to market or sell living trusts. We hold that an attorney violates DR 3-101(A) when the attorney assists a nonattorney, as respondent assisted the nonattorneys, in the marketing and selling of living trusts.

{¶ 16} In *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 28, 1 O.O. 313, 315, 193 N.E. 650, 652, we held that the practice of law "includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured." This broad standard later led us to the conclusion that, in the field of estate planning, when a "bank or trust company

which provides specific legal information in relation to the specific facts of a particular person's estate," the bank is engaging in the practice of law. *Green v. Huntington Natl. Bank* (1965), 4 Ohio St.2d 78, 33 O.O.2d 442, 212 N.E.2d 585, paragraph one of the syllabus. The pronouncement in *Hanna* that nonattorneys engage in the unauthorized practice of law when they market and sell living trusts, therefore, represents the logical extension of *Green.*

{¶ 17} Just as problems arise when nonattorneys market and sell trusts, potential problems arise when attorneys aid nonattorneys in the marketing and sale of these legal instruments. Whether an attorney works in-house or accepts referrals from a trust marketing company, the question of whether the client is receiving carefully considered, independent advice is present. An attorney is required to act in the best interest of the attorney's client. See EC 5-1. When the attorney affiliates himself or herself with nonattorneys who sell trusts, the attorney's interests are divided between working for or receiving referrals from the nonattorney, and attempting to represent the nonattorney's clients. See *Iowa State Bar Assn. Commt. on Professional Ethics & Conduct v. Baker* (Iowa 1992), 492 N.W.2d 695, 703; *People v. Volk* (Colo.1991), 805 P.2d 1116, 1117. Although this is the first time we address the issue of attorneys aiding nonattorneys in the sale or marketing of living trusts, the issue is not new to this state or to other states.

{¶ 18} In *In re Mid-America Living Trust Assoc., Inc.* (Mo.1996), 927 S.W.2d 855, the Supreme Court of Missouri carefully explained that attorneys aid in the unauthorized practice of law when they assist nonattorneys who market or sell trust documents. The court observed that preparation of trust documents and advising and counseling clients on which type of trust is appropriate are solely a function of an attorney. *Id.* at 860-861. The principal reason courts have restricted the rendering of legal services to licensed attorneys is for the protection of the public. *Id.* at 862 (citing *Florida Bar v. Schramek* [Fla.1993], 616 So.2d 979, 987; *People ex rel. MacFarlane v. Boyls* [1979], 197 Colo. 242, 591 P.2d 1315); see,

also, *People v. Macy* (Colo.1990), 789 P.2d 188. These concerns for public protection, the Missouri high court noted, led many state ethical advisory boards to bar attorneys from aiding or participating in such schemes.[1] 927 S.W.2d at 863-864.

{¶ 19} The facts in *Mid-America* are similar to those before us. A "review attorney" reviewed trust documents prepared by nonattorneys. The court offered several reasons why this does not cure and, in fact, aids the unauthorized practice of law by the nonattorney. First, the review attorney enters the relationship too late—the nonattorney has already given legal advice to the client regarding the client's legal matters, has gathered important information, and has recommended and sold a trust instrument. 927 S.W.2d at 867. In the eyes of the public, the review attorney lends credibility and a facade of legality to the product the nonattorney offers, but the attorney does not make the critical decisions necessary for the creation of the trust or provide disinterested advice. See *People v. Cassidy* (Colo.1994), 884 P.2d 309, 311. " '[T]he mere perfunctory approval of supposedly disinterested counsel' does not cure the fact that interested non-lawyers had prepared trust documents." *Mid-America,* 927 S.W.2d at 867 (quoting *State ex rel. Miller v. St. Louis Union Trust Co.* [1934], 335 Mo. 845, 870, 74 S.W.2d 348, 360). By the time the attorney enters the transaction, the unauthorized practice of law has already occurred and anything the attorney does thereafter aids the prohibited conduct.

{¶ 20} Second, participation by review attorneys violates rules of ethical conduct and, accordingly, cannot cure the unauthorized practice of law. *Id.* By

---

1. In its opinion, the Supreme Court of Missouri cites the following ethics opinions: Michigan Informal Ethics Opinion RI-191 (Feb. 14, 1994); Ohio Supreme Court Bd. of Commrs. on Grievances and Discipline Ethics Opinion 92-15 (Aug. 14, 1992); Maryland Ethics Opinion 92-48 (July 22, 1992); West Virginia Ethics Opinion 92-03 (undated); Illinois Ethics Opinion 91-10 (Oct. 25, 1991); Oregon Ethics Opinion 1991-87 (July, 1991); Connecticut Ethics Opinion 91-12 (June 25, 1991); Colorado Ethics Opinion 87 (July 14, 1990); South Dakota Ethics Opinion 88-4 (May 3, 1988).

working for nonattorneys who market and sell trusts to review the documents the nonattorney has created, the attorney is acting with a conflict of interest, places his or her independent professional judgment at risk, and "rubber stamps" the unauthorized practice of law engaged in by nonattorneys. 927 S.W.2d at 867-869. When an attorney is positioned between two clients whose interests may be different, the attorney cannot serve both clients properly, or ethically.

{¶ 21} The practice of an attorney reviewing trust documents marketed and prepared by nonattorneys is similar to the situation this court examined in *Wayne Cty. Bar Assn. v. Naumoff* (1996), 74 Ohio St.3d 637, 660 N.E.2d 1177. In *Naumoff*, we examined an arrangement in which an attorney accepted referrals from a nonattorney tax specialist to prepare estate planning documents. The tax specialist prepared worksheets and forwarded legally relevant data to the attorney. The attorney created the legal documents, sometimes with no client contact, and split a fee with the tax specialist. We concluded that the attorney aided the nonattorney in the unauthorized practice of law. *Id.* at 639, 660 N.E.2d at 1178.

{¶ 22} Just as the attorney in *Naumoff* aided in the unauthorized practice of law, so too did respondent violate DR 3-101(A). Respondent became affiliated with a group of nonattorneys who marketed and sold trusts to the public, and did little more than summarily approve of the product they were selling. "Unlike a salesperson, the good lawyer's counsel is not directed to the sale of a product but to the best interests of the client. A lawyer's counseling is more than informing 'his client about the legal consequences of pursuing a particular objective that the client has already identified and chosen. * * * [R]esponsibilities to a client go beyond the preliminary clarification of his goals and include helping him to make a deliberately wise choice among them.' " *Akron Bar Assn. v. Miller* (1997), 80 Ohio St.3d 6, 9, 684 N.E.2d 288, 291 (quoting Kronman, The Lost Attorney [1993] 128-129). When an attorney abandons these responsibilities in favor of assisting nonattorneys to market and sell legal documents, the attorney compromises the best

interests of the client. For the reasons stated, an attorney aids in the unauthorized practice of law in violation of DR 3-101(A) where the attorney engages in a relationship with a nonattorney to market or sell legal trust documents to the public and does nothing more than summarily approve documents created by the nonattorney.

{¶ 23} Based on the record before us, we conclude that respondent aided in the unauthorized practice of law in violation of DR 3-101(A) through his relationship with EPG, The Estate Plan, and Fox. Respondent did little more than advise clients that he was entitled to a fee and then direct The Estate Plan to draft the living trust documents. Respondent did not see the final trust documents, did not execute the documents with the client, and certainly did not render the type of advice or counsel that a lawyer is ethically bound to render.

Sanction

{¶ 24} We have considered respondent's misconduct, the aggravating and mitigating circumstances described by the board, and our rejection of one of the board's findings of a Disciplinary Rule violation, and we conclude that a six-month suspension is an appropriate sanction. Respondent is hereby suspended from the practice of law for six months. Costs taxed to respondent.

*Judgment accordingly.*

DOUGLAS, RESNICK, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would stay a six-month suspension.

PFEIFER, J., concurs in part and dissents in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 25} Among other things, the majority concludes that Kathman violated DR 3-101(A), which prohibits a lawyer from aiding "a non-lawyer in the unauthorized practice of law." I concur with that judgment.

{¶ 26} However, Kathman did not violate the rule accidentally or incidentally. He was part of a scheme designed to advance the unauthorized practice of law. That scheme, according to the record, continues to this day. That his lifelong friend is the principal instigator behind the scheme does not obviate Kathman's responsibilities as an attorney. I would indefinitely suspend Kathman from the practice of law.

_____

*Keating, Muething & Klekamp* and *Richard L. Creighton, Jr.; Robert J. Gehring Co., L.P.A.,* and *Robert J. Gehring*, for relator.

*Robert G. Kelly*, for respondent.

_____