CLEVELAND BAR ASSOCIATION *v.* NOSAN.

[Cite as *Cleveland Bar Assn. v. Nosan,*
108 Ohio St.3d 99, 2006-Ohio-163.]

(No. 2005–1184—Submitted August 23, 2005—Decided February 1, 2006.)

_____

**Per Curiam.**

{¶ 1} Respondent, Bernard J. Nosan of Broadview Heights, Ohio, Attorney Registration No. 0032097, was admitted to the practice of law in Ohio in 1973. On July 2, 2003, relator, Cleveland Bar Association, charged respondent in a two-count complaint with violations of the Code of Professional Responsibility. Respondent answered, and a panel of the Board of Commissioners on Grievances

and Discipline heard the cause and made findings of misconduct and a recommendation, which the board adopted.

## Misconduct

{¶ 2} Both counts arose from respondent's affiliation during 1997 through 1999 with Financial Services Management Corporation of Las Vegas, Nevada ("FSMC"), a company that provided consumer-debt-consolidation services and debt-relief advice.

## Count I

{¶ 3} The board found that respondent's working arrangement with FSMC resulted in violations of DR 3–101(A) (a lawyer shall not aid a nonlawyer in the unauthorized practice of law), 3–102(A) (in general, a lawyer shall not share legal fees with a nonlawyer), and 3–103(A) (a lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law).

{¶ 4} In 1997, when respondent began working with the company, FSMC associated with attorneys to offer consumers help in managing their financial problems. FSMC leased office space for the associated attorneys, arranged advertising for their services, and provided support staff. In exchange for these business expenses, the attorney shared clients' legal fees with FSMC.

{¶ 5} Respondent entered into this arrangement with FSMC. He kept office space in Cleveland and Akron, where a nonlawyer intake interviewer would meet with a financially troubled client and, using computer software, determine whether to recommend a debt-repayment plan or bankruptcy. The interviewer would also explain the services that respondent and FSMC offered, review the client's financial records, and set up a payment plan. On the few occasions that the client could not afford to repay the debts, the intake officer would refer the client to respondent to explore bankruptcy options.

{¶ 6} Documents supplied to the consumers-turned-respondent's-clients bore his "Bernard J. Nosan, Esq., Attorney at Law" letterhead; however, respondent did not prepare the documents or any forms that were used by his intake staff. In addition, respondent rarely talked with any of the clients who signed up for the debt-management advice that the intake interviewer provided in conjunction with FSMC. In fact, respondent could recall at the panel hearing only a few times that he had had any personal contact with the many clients whom he supposedly represented.

{¶ 7} Respondent charged his clients a fee for establishing their repayment plan. Upon payment, he deposited the fees into his client trust account and wrote two checks: one to FSMC for 75 percent of the collected fee and the other

to himself for the remaining 25 percent. Respondent and FSMC took their fees before any creditors were paid, requiring the client to bank that sum first.

## Count II

{¶ 8} Dwight Edmond went to respondent's Cleveland office in December 1997 looking for a lawyer to help him file bankruptcy. Believing that he was retaining legal representation, Edmond discussed with respondent's intake staff ways to manage his debt, which he estimated to be around $30,000. Edmond wanted to file for bankruptcy but couldn't pay the filing fee, so the intake interviewer suggested a plan to save up money for the bankruptcy fee and, in the meantime, keep his creditors at bay. The plan required Edmond to mail $156 every two weeks to respondent's office. Edmond also signed a contract with "Bernard J. Nosan Attorney at Law," in which he agreed to a $485 consulting and setup fee, among other, lesser charges.

{¶ 9} Over the next year, Edmond paid respondent and FSMC $425 in installments, none of which went to creditors. At some point, Edmond lost his job and could not keep up the $156 payments. At first, respondent's staff told Edmond to continue paying whatever amount he was able. Later, the telephone number that Edmond had for respondent's office was disconnected, and no one replied to his letter to the Akron office. Edmond eventually hired an attorney who completed the bankruptcy process on his behalf.

{¶ 10} The board found that in representing Edmond, respondent had violated DR 2-106(A) (a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee) and 2-106(B) (a fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee).

## Sanction

{¶ 11} In recommending a sanction for this misconduct, the board weighed the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 12} The board found as a mitigating factor that respondent, who has nearly stopped practicing law and is living on Social Security retirement benefits, had no prior disciplinary record. BCGD Proc.Reg. 10(B)(2)(a). The board also noted that respondent had not acted dishonestly in associating with FSMC, with whom he is no longer connected, because he did not understand that their arrangement violated the Disciplinary Rules. BCGD Proc.Reg. 10(B)(2)(b). As an aggravating factor, however, the board noted respondent's inability to appreciate the wrongfulness of his misconduct. See BCGD Proc.Reg. 10(B)(1)(g). The board

also found respondent's failure to refund Edmond's money to be an aggravating factor.

{¶ 13} Relator suggested that respondent's license to practice be suspended for six months. Respondent did not believe that he had violated any Disciplinary Rules.

{¶ 14} Adopting the panel's report, the board recommended that respondent be suspended from the practice of law for six months, with the suspension stayed on the condition that he repay Edmond $425. The board relied in part on *Wayne Cty. Bar Assn. v. Naumoff* (1996), 74 Ohio St.3d 637, 660 N.E.2d 1177, in which we suspended a lawyer's license for six months because he advised clients about their estate-planning options, without ever having met them, based solely on worksheets completed by a referring tax preparer. Because respondent, unlike *Naumoff*, has no history of professional discipline, the board recommended a stayed six-month suspension for respondent.

{¶ 15} Neither respondent nor relator objects to the board's recommended sanction.

## Review

{¶ 16} Respondent allowed nonattorneys in his office to counsel clients about how to protect their legal interests through bankruptcy or some other financial plan. He also impermissibly associated and shared fees with a nonlawyer, creating the impression through his professional status that his clients' interests were being protected in accordance with the ethical and competency standards of the legal profession. We therefore agree that he violated DR 3–101(A), 3–102(A), and 3–103(A), as found by the board. Moreover, because Edmond paid respondent $425 and got nothing for his fee, we find that respondent violated DR 2–106(A).

{¶ 17} Respondent abandoned his professional responsibility to oversee and safeguard his clients' individual interests by fronting for a business that profited from the sale of debt-management services to consumers. His misconduct is thus similar to cases in which we have sanctioned lawyers for aiding nonattorneys in the sale or marketing of living trusts. In *Cincinnati Bar Assn. v. Kathman* (2001), 92 Ohio St.3d 92, 748 N.E.2d 1091, we suspended a lawyer from the practice of law for six months in a case of first impression. In *Columbus Bar Assn. v. Fishman*, 98 Ohio St.3d 172, 2002-Ohio-7086, 781 N.E.2d 204, we suspended a lawyer for one year because he had set up his clients as sales prospects for other financial products in addition to a living trust and was largely unrepentant for his misconduct. In *Columbus Bar Assn. v. Moreland*, 97 Ohio St.3d 492, 2002-Ohio-6726, 780 N.E.2d 579, we publicly reprimanded a relatively

unseasoned and contrite lawyer for his involvement in a living-trust marketing scheme.

{¶ 18} Respondent has been in practice for many years, and yet he still has difficulty understanding that he acted unethically, a circumstance that distinguishes this case from *Moreland*. On the other hand, respondent did not compromise his clients' interests to the extent that he targeted them for sales, and that factor distinguishes his case from *Fishman*. The six-month suspension imposed in *Kathman* served to deter other lawyers from relinquishing their professional responsibilities to laypersons. Moreover, because respondent and FSMC are no longer in business together and the board recommended it, we find a conditional stay of the six-month suspension appropriate in this case.

{¶ 19} Respondent is therefore suspended from the practice of law for six months; however, this suspension is stayed on the condition that he commit no further misconduct within the suspension period and that he repay Edmond $425 within 60 days of our order. If respondent violates these conditions, the stay will be lifted and respondent shall serve the entire six–month suspension. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., not participating.

———————

Buckley King and Douglas N. Barr, for relator.

Bernard J. Nosan, pro se.