CINCINNATI BAR ASSOCIATION *v.* HEISLER.

[Cite as *Cincinnati Bar Assn. v. Heisler,*
113 Ohio St.3d 447, 2007-Ohio-2338.]

(No. 2006–2309—Submitted February 14, 2007—Decided May 30, 2007.)

---

**Per Curiam.**

{¶ 1} Respondent, D. Daniel Heisler of Bowling Green, Ohio, Attorney Registration No. 0029005, was admitted to the practice of law in Ohio in 1981.[1] The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for six months, staying the entire suspension on conditions, because respondent committed professional misconduct while associated with a company that sold living trusts and financial services to his clients. On review, we find that a stayed six-month suspension is appropriate for respondent's violations of the Code of Professional Responsibility.

{¶ 2} Relator, Cincinnati Bar Association, charged that respondent's affiliation with Senior Estate Planning Services, Inc. ("SEPS") and its predecessor, Mid–South Estate Planning ("MSEP"), a Louisiana-based company in business to market and sell estate-planning services, violated DR 2–102(B) (prohibiting lawyers from practicing under a trade name), 2–103(C) (prohibiting a lawyer from engaging a person or organization to promote the lawyer's professional services, except to the extent permitted by a lawyer-referral service), 3–101(A) (prohibiting a lawyer from aiding a nonlawyer in the unauthorized practice of law), and 3–102(A) (prohibiting a lawyer generally from sharing fees with a nonlawyer).

{¶ 3} A three-member panel of board members heard the cause, including respondent's stipulations that he committed the charged misconduct, and found

---

1. Respondent, as of April 16, 2007, is on interim suspension for default on a child-support order. *In re Heisler,* 113 Ohio St.3d 1455, 2007-Ohio-1751, 864 N.E.2d 643.

violations of the cited Disciplinary Rules. The panel recommended that respondent receive a six-month suspension, all stayed. The board adopted the panel's findings of misconduct and recommendation.

{¶ 4} Neither party objects to the board's report.

## Misconduct

{¶ 5} Respondent's role in the MSEP/SEPS marketing process bears some resemblance to that of other lawyers whom we have censured for losing sight of their professional duties to clients through similar affiliations. See, e.g., *Disciplinary Counsel v. Kramer*, 113 Ohio St.3d 455, 2007-Ohio-2340, 866 N.E.2d 498; *Disciplinary Counsel v. Wheatley*, 107 Ohio St.3d 224, 2005-Ohio-6266, 837 N.E.2d 1188; *Columbus Bar Assn. v. Fishman*, 98 Ohio St.3d 172, 2002-Ohio-7086, 781 N.E.2d 204; *Columbus Bar Assn. v. Moreland*, 97 Ohio St.3d 492, 2002-Ohio-6726, 780 N.E.2d 579; and *Cincinnati Bar Assn. v. Kathman* (2001), 92 Ohio St.3d 92, 748 N.E.2d 1091.

{¶ 6} Respondent began working for MSEP in June 2004 as part of its network to market living trusts and sell other estate-planning services, mainly to elderly customers. MSEP sent mass mailings to its targeted demographic and referred sales leads to respondent. Respondent contacted prospective customers to discuss their estate-planning needs, to acquaint them with the advantages of a living trust, to prepare documents to support the trust or whatever estate-planning tool suited the customer, and to arrange with MSEP for the clients to sign the necessary papers. Initially during this affiliation, nonlawyer MSEP sales agents met with prospects before respondent did to promote the MSEP's estate-planning services. After two or three months and comparatively few sales contacts, however, respondent began doing his interviews without lay assistance.

{¶ 7} In May or June 2005, SEPS acquired MSEP's assets, and respondent continued to work for the successor company under essentially the same conditions.

{¶ 8} While employed by MSEP/SEPS, respondent promoted its services to approximately 40 customers, seven of whom had been referred by a nonlawyer sales agent. Respondent usually, but not always, recommended the purchase of a living trust to these customers, whom he considered to be clients notwithstanding that he worked for MSEP/SEPS. According to the stipulations, "[i]n some instances, respondent counseled potential clients/customers not to purchase the living trust and associated estate planning documents being marketed by MSEP/SEPS because they were not appropriate for their circumstances."

{¶ 9} Respondent typically interviewed sales prospects personally following an MSEP/SEPS referral, collecting personal and financial information. He offered prospects a business card describing his credentials as an estate-planning attor-

ney and living-trust consultant. Respondent then reviewed with prospects various types of estate-planning tools that might serve their particular needs, including revocable living trusts, through verbal and visual presentations. If a prospect decided to purchase a living trust with supporting documentation from MSEP/SEPS, respondent collected a $2,395 fee, payable to MSEP/SEPS.

{¶ 10} After the interview, respondent typically entered the client information into a computer program using software provided by MSEP/SEPS, revised portions of the generated documents as needed, and sent them electronically to MSEP/SEPS. MSEP/SEPS compiled the documents in a binder format to return to the customer, and respondent reviewed the completed package. MSEP/SEPS then arranged for a notary public to pick up and deliver the final documents to the clients for signature and attestation. Respondent did not meet again with the customer, but he did provide written instructions on his letterhead for executing the documents and transferring properties to the newly formed trust. He also invited questions from the customers.

{¶ 11} MSEP/SEPS paid respondent a weekly salary of $1,000, underwrote his office expenses, and paid him a $500 commission from each $2,395 contract fee he collected.

{¶ 12} Of respondent's many customer-clients, only two formally complained that he had violated professional ethical standards. Gerald and Audrey Day purchased a living trust and associated estate-planning documents from respondent and MSEP in September 2004, paying him the standard $2,395 price. Respondent considered the Days to be his clients and to be entitled to attorney-client confidentiality. He thus advised the Days that he was an attorney and acknowledged that he was providing legal advice.

{¶ 13} Respondent interviewed the Days and completed their paperwork in accordance with the usual process. Unknown to respondent, however, a sales agent from Mid–South Financial Planning, an entity connected to MSEP, contacted the couple several months after they executed the living trust and associated estate-planning documents. The agent attempted to sell the Days various financial services. The Days rejected all offers and demanded a refund.

{¶ 14} The Days later retained legal counsel and filed a grievance, claiming that they had been charged excessively for respondent's and MSEP's services and had been sold services that the couple did not need. After notice of their grievance, respondent delivered a complete refund from SEPS to repay the Days.

{¶ 15} Respondent received fewer referrals from SEPS after the Day grievance, and in January 2006, he ended his affiliation with that company.

{¶ 16} We accept respondent's stipulations to the charged misconduct. We find that by helping MSEP/SEPS sell the preparation of living-trust agreements

and associated documents to customers, respondent aided the unauthorized practice of law in violation of DR 3–101(A). We find that by operating under the trade names "Mid–South Estate Planning" and "Senior Estate Planning Services," respondent violated DR 2–102(B). Because respondent shared his fees with MSEP/SEPS, we further find that respondent violated DR 3–102(A). And because respondent improperly used MSEP/SEPS to promote his professional services, we find that respondent violated DR 2–103(C).

Sanction

{¶ 17} We have repeatedly disapproved of an attorney's affiliation with living-trust marketing ventures and have imposed sanctions ranging from a public reprimand to a one-year suspension from the practice of law for resulting ethical breaches. See, e.g., *Moreland*, 97 Ohio St.3d 492, 2002-Ohio-6726, 780 N.E.2d 579 (public reprimand); *Kramer*, 113 Ohio St.3d 455, 2007-Ohio-2340, 866 N.E.2d 498 (six-month suspension, all conditionally stayed); *Wheatley*, 107 Ohio St.3d 224, 2005-Ohio-6266, 837 N.E.2d 1188 (six-month actual suspension); *Kathman*, 92 Ohio St.3d 92, 748 N.E.2d 1091 (six-month actual suspension); and *Fishman*, 98 Ohio St.3d 172, 2002-Ohio-7086, 781 N.E.2d 204 (one-year suspension). Respondent's case most closely resembles *Kramer* and warrants a six-month stayed suspension.

{¶ 18} Neither respondent nor the lawyer in *Kramer* completely surrendered his independent professional judgment for the sake of sales, instead meeting personally with clients and at times dissuading them from buying living trusts when the sale was not in the clients' best interests. Both attorneys personally performed all the work for their customer-clients. These exercises of independent judgment distinguish the conduct in this case and *Kramer* from the wrongdoing in *Kathman*, 92 Ohio St.3d at 94, 748 N.E.2d 1091, and *Fishman*, 98 Ohio St.3d 172, 2002-Ohio-7086, 781 N.E.2d 204, ¶ 7, where the lawyers merely facilitated the sales process by having lay personnel fill in the blanks on boilerplate forms made available by the marketing company. Moreover, unlike the lawyers in *Fishman*, id. at ¶ 20, and *Wheatley*, 107 Ohio St.3d 224, 2005-Ohio-6266, 837 N.E.2d 1188, ¶ 39, respondent and the lawyer in *Kramer* eventually came to understand the dangers inherent in affiliations with living-trust sales enterprises.

{¶ 19} Our discipline is also justified by the mitigating factors. See Section 10(B)(2) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 20} Respondent has expressed sincere remorse, promising that he will not engage in similar activities again. Respondent also cooperated completely in the disciplinary proceedings and established his good character and reputation apart

from the underlying misconduct. BCGD Proc.Reg. 10(B)(2)(d) and (e). Respondent referred to his many professional and civic achievements and presented letters from a local common pleas judge, attorney, and a retired high school teacher, commending his professional competence and personal integrity. The Days also received restitution. Finally, respondent's domestic difficulties, including caring for aging parents while unable to find sustained employment, are factors to weigh in favor of lenience.

{¶ 21} For these reasons, we suspend respondent from the practice of law in Ohio for six months; however, the suspension is stayed on the condition that respondent commit no further misconduct. If respondent violates the term of the stay, the stay will be lifted, and respondent shall serve the entire six-month suspension. Costs are taxed to respondent.

Judgment accordingly.

LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

MOYER, C.J., PFEIFER and O'CONNOR, JJ., dissent.

----

**MOYER, C.J., dissenting.**

{¶ 22} I respectfully dissent from the majority decision in regard to the sanction imposed on respondent. As the majority states, we have repeatedly heard cases with facts similar to those in the present matter and have imposed sanctions ranging from a public reprimand to a one-year suspension. The majority finds that this case is most similar to *Disciplinary Counsel v. Kramer*, 113 Ohio St.3d 455, 2007-Ohio-2340, 866 N.E.2d 498, wherein we imposed a six-month suspension, all conditionally stayed.

{¶ 23} However, I am unable to distinguish respondent's misconduct from the actions discussed in *Disciplinary Counsel v. Wheatley*, 107 Ohio St.3d 224, 2005-Ohio-6266, 837 N.E.2d 1188, and *Cincinnati Bar Assn. v. Kathman* (2001), 92 Ohio St.3d 92, 748 N.E.2d 1091. I would therefore impose the same sanction as in those cases, a six-month suspension with no time stayed.

PFEIFER and O'CONNOR, JJ., concur in the foregoing opinion.

----

Robert J. Gehring and Richard L. Creighton Jr., for relator.

D. Daniel Heisler, pro se.