CINCINNATI BAR ASSOCIATION *v.* MID-SOUTH ESTATE PLANNING, L.L.C., ET AL.

[Cite as *Cincinnati Bar Assn. v. Mid–South Estate Planning, L.L.C.*, 121 Ohio St.3d 214, 2009-Ohio-747.]

(No. 2008–1893—Submitted November 19, 2008—Decided February 25, 2009.)

Per Curiam.

{¶ 1} Relator, Cincinnati Bar Association, filed a complaint charging that respondents, Senior Estate Planning Services of America, Inc. ("SEPSA") and Robert D. Tanner Jr., in association with respondent Mid–South Estate Planning, L.L.C. ("Mid–South"), engaged in the unauthorized practice of law by soliciting Ohio residents for the sale of legal instruments prepared by laypersons, including living trusts and other estate-planning devices. The Board on the Unauthorized Practice of Law concluded that both SEPSA and Tanner had practiced law in violation of Ohio licensure requirements and recommended that we enjoin them from committing further illegal acts and assess jointly and severally against them $50,000 in civil penalties. We agree that respondents SEPSA and Tanner engaged in the unauthorized practice of law and that an injunction and civil penalties are warranted.[1]

### Procedural Background

{¶ 2} Relator moved for summary judgment pursuant to Civ.R. 56(C), which Gov.Bar R. VII(14) makes applicable in proceedings before the board. SEPSA and Tanner, who together had filed an answer to relator's complaint, failed to respond to the motion. A panel of the board granted summary judgment, found that SEPSA and Tanner had engaged in the unauthorized practice of law, and recommended an injunction and the $50,000 civil penalty. The board adopted the panel's findings of fact, conclusions of law, and recommendation.

{¶ 3} The parties have not objected to the board's report.

---

1. The board treated relator's allegations against Mid–South separately upon the filing pursuant to Gov.Bar R. VII(5b) of a joint motion for approval of a proposed consent decree. See *Cincinnati Bar Assn. v. Mid–South Estate Planning, L.L.C.*, 121 Ohio St.3d 212, 2009-Ohio-749, 903 N.E.2d 294.

### Respondents SEPSA and Tanner Engaged
### in the Unauthorized Practice of Law

{¶ 4} Summary judgment may be granted when the properly submitted evidence, construed in favor of the nonmoving party, shows that the material facts in the case are not in dispute and that the moving party is entitled to judgment as a matter of law because reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 11. Relator has satisfied this standard.

{¶ 5} The board made the following findings of fact:

{¶ 6} "1. Relator * * * is duly authorized to investigate and prosecute activities which may constitute the unauthorized practice [of] law in the State of Ohio.

{¶ 7} "2. Respondents Mid–South and SEPSA, are corporations organized in the State of Louisiana. * * *

{¶ 8} "3. On June 10, 2005, SEPSA acquired certain assets from Mid–South including its operations in Blue Ash, Ohio through an Asset Purchase Agreement.

{¶ 9} "4. Mid–South and SEPSA were engaged in Ohio in the business of marketing legal services for living trusts. * * *

{¶ 10} "5. None of the Respondents are admitted to the practice of law in Ohio. * * *

{¶ 11} "6. Prior to June 2005, Respondent Robert D. Tanner served as General Manager for Mid–South Estate Planning L.L.C. * * *

{¶ 12} "7. After the sale of Mid–South, Respondent Tanner became the Officer, Director and Owner of SEPSA and directed the activities of SEPSA. * * *

{¶ 13} "8. Ohio attorney Daniel Heisler was hired by Mid–South through Respondent Tanner in June, 2004. * * *

{¶ 14} "9. Ohio residents who responded positively to direct solicitations for estate planning services from Mid–Ohio/SEPSA [sic; "Mid–South/SEPSA"] were referred by appointment to Heisler * * * to be interviewed as prospective clients. Prospective clients would subsequently make a decision to purchase a trust after meeting with Heisler. Heisler provided the requisite legal advice during the client meeting and later made the appropriate modifications to standard form estate planning documents via a computer system and software owned and provided by Mid–Ohio [sic; "Mid–South"] or Tanner and SEPSA. * * *

{¶ 15} "10. The legal documents modified on the computer system by Heisler were finalized by SEPSA staff in Louisiana and delivered directly to Heisler or the clients for execution and notarization.

{¶ 16} "11.  Heisler was paid by either corporation $1,000 per week and $500 for every living trust sold.  In addition, he was provided free office expenses by both corporations.

{¶ 17} "12.  The price for the trust services was set by Mid–South and SEPSA, with payment made from the client directly to either corporation, but not to Heisler.  A portion of the proceeds was remitted to Heisler.

{¶ 18} "13.  Heisler's services continued after June, 2005 when Tanner, through SEPSA, purchased the assets of Mid–South until the termination of his employment in 2006.  Heisler provided the same services for SEPSA as he had provided to Mid–South.

{¶ 19} "14.  Heisler was suspended for a term of six months stayed from the practice of law by the Supreme Court for assisting Mid–South and SEPSA in the sale and preparation of living-trust agreements and associated documents to customers in violation of DR 3–101(A) (aiding in the unauthorized practice of law).  *Cincinnati Bar Assn. v. Heisler,* 113 Ohio St.3d 447, 2007-Ohio-2338 [866 N.E.2d 490].

{¶ 20} "15.  SEPSA advertised its services on the internet.  The advertisement provided that *inter alia*:

{¶ 21} " 'Our services are very complete.  We write Single Trusts, Family Trusts, A & B Trusts and C Trusts.  These may include Pour Over Wills, Living Wills with Medical POA (Power of Attorney), Regular POA, Power of Attorney for Healthcare, Generation Skipping, Disclaimer Trusts, or Qualified Domestic Trust provisions as required.'

{¶ 22} "16.  These proceedings identified five Ohio residents for whom living trusts were sold and prepared by SEPSA and Tanner after 2005:  Marian Finnell, Junior Cole, Agnes Cole, Margie Lawson and Esther R. Johnson."

{¶ 23} The board made the following conclusions of law:

{¶ 24} "1. The Supreme Court of Ohio has original jurisdiction regarding admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law.  Section 2(B)(*l* )(g), Article IV, Ohio Constitution; *Royal Indemnity Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31 [27 OBR 447], 501 N.E.2d 617.

{¶ 25} "2. The unauthorized practice of law consists of rendering legal services for another by any person not admitted to practice in Ohio. Gov. Bar R. VII(2)(A).

{¶ 26} "3. The practice of law includes the preparation of legal instruments of all kinds and legal advice.  *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650.

{¶ 27} "4. With limited exception, a corporation may not give legal advice, directly or indirectly, through its employees or attorney employees. *Judd v. City Trust & Sav. Bank* (1937), 133 Ohio St. 81 [10 O.O. 95], 12 N.E.2d 288.

{¶ 28} "5. The marketing of living trusts and the preparation of legal documents related to living trusts by non-attorneys is the unauthorized practice of law. *Cincinnati Bar Assn. v. Kathman* (2001), 92 Ohio St.3d 92 [748 N.E.2d 1091].

{¶ 29} "6. Respondents Tanner's and SEPSA's sale and preparation of living-trust agreements and associated documents to customers is the unauthorized practice of law. * * *

{¶ 30} "7. Respondents Tanner's and SEPSA's sale and preparation of living trusts for Marian Finnell, Junior Cole, Agnes Cole, Margie Lawson and Esther R. Johnson after June 2005 constituted the unauthorized practice of law.

{¶ 31} "8. Each act found * * * to constitute the unauthorized practice of law is based upon specific evidence or an admission that contains sufficient information to demonstrate the specific activities upon which the conclusions are drawn in compliance with Gov.Bar R. VII(7)(H); and *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108 [857 N.E.2d 95] at ¶ 24–26."

{¶ 32} We accept the board's findings of fact and conclusions of law.

## An Injunction and Civil Penalties Are Warranted

{¶ 33} Having found that SEPSA and Tanner engaged in the unauthorized practice of law, we accept the board's recommendation to issue an injunction prohibiting them from marketing and selling legal instruments prepared by laypersons, including living trusts and other estate-planning devices, and from engaging in all other acts constituting the unauthorized practice of law.

{¶ 34} We also accept the recommendation to impose the civil penalty authorized by Gov.Bar R. VII(8)(B). In reaching this determination, we weigh the factors listed in that rule and in the supplementary provisions of UPL Reg. 400(F). Factors weighing in favor of a civil penalty include respondents' lack of cooperation during these proceedings, evidenced by their failure to provide timely and accurate information in response to legitimate requests. See Gov.Bar R. VII(8)(B)(1). By way of example, SEPSA and Tanner represented in their April 5, 2007 answer to relator's complaint that SEPSA had ceased doing business in Ohio. Four days later, however, SEPSA solicitations to customers continued to appear on an Internet site.

{¶ 35} Moreover, the number of times SEPSA and Tanner engaged in the unauthorized practice of law weighs against them. See Gov.Bar R. VII(B)(2). Through widely distributed solicitations, respondents sold products constituting legal services to at least five different customers, confirming an extensive effort

to engage in unlawful activities in this state. And by selling these products without having to comply with ethical standards establishing a lawyer's duty to safeguard client interests, respondents profited at the customers' expense, creating an incalculable risk to the customers' financial resources and future. See UPL Reg. 400(F)(3)(d). Finally, because we have repeatedly condemned living-trust marketing schemes virtually identical to respondents' business model, see, e.g., *Disciplinary Counsel v. Kramer,* 113 Ohio St.3d 455, 2007-Ohio-2340, 866 N.E.2d 498; *Disciplinary Counsel v. Wheatley,* 107 Ohio St.3d 224, 2005-Ohio-6266, 837 N.E.2d 1188; and *Columbus Bar Assn. v. Fishman,* 98 Ohio St.3d 172, 2002-Ohio-7086, 781 N.E.2d 204, the instant unlawful activities manifest flagrant violations. Gov.Bar R. VII(8)(3).

{¶ 36} Based on the foregoing and the total absence of any mitigating factors, SEPSA's and Tanner's conduct in engaging in the unauthorized practice of law warrants the imposition of the maximum civil penalties. We therefore enjoin SEPSA and Tanner and their officers, agents, employees, successors, and assigns from marketing and selling legal instruments prepared by laypersons, including living trusts and other estate-planning devices, and from engaging in all other acts constituting the unauthorized practice of law in Ohio. We also order SEPSA and Tanner to pay civil penalties, assessed jointly and severally, in the amount of $50,000, which represents $10,000 for each of their five offenses, and to pay the costs of these proceedings.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Thomas S. Calder and Sue A. Erhart, for relator.